# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. |
| Jaime Diaz, Edwin Joel Buesa-Pereira, and Milton Adonai Cantarero-Diaz | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **July 25, 2025** in the county of **Webb** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of officla duties and where such acts involves physical contact with the victim of that assault |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

/S/ Sean Polson
*Complainant's signature*

Sean Polson, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

*Judge's signature*

City and state: Laredo, Texas      Brian Bajew, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Sean Polson, Special Agent of the Federal Bureau of Investigation (FBI), being first duly sworn, depose and state as follows:

1. The facts in this affidavit come from my personal observations and investigative activities, my training and experience, and information obtained from other law enforcement officers and witnesses with personal knowledge of the facts. This affidavit is intended to show merely that there is sufficient probable cause for the Court to authorize a criminal complaint and does not set forth all my knowledge about this matter.

2. As further set forth below, I am conducting an investigation into an Assault on a Federal Officer, in violation of Title 18, United States Code, Section(s) 111(a)(1) by **Jaime DIAZ** (hereafter, "**DIAZ**"), **Edwin Joel BUESA-Pereira** (hereafter, "**BUESA**"), and **Milton Adonai CANTARERO-Diaz** (hereafter, "**CANTARERO**").

3. On July 25, 2025, at approximately 11:30 PM, Laredo South Station U.S. Border Patrol Agent (BPA) K.O., Star S-441 (hereafter, "BPA K.O") was performing his assigned duties patrolling near Laredo College in his marked U.S. Border Patrol (USBP) vehicle when BPA K.O. observed a marked Laredo College Police Department (hereafter, "LCPD") unit conducting a traffic stop near the intersection of Pinder Avenue and Moctezuma Street. As BPA K.O. was passing by, the LCPD Officer conducting the traffic stop requested BPA K.O.'s assistance in conducting an immigration inspection.

4. BPA K.O. pulled his marked vehicle to the shoulder and requested supervisor approval to conduct an immigration inspection. While waiting for approval, BPA K.O., who was wearing his USBP issued uniform, exited his vehicle and approached the driver of the stopped vehicle along with the LCPD Officer. The driver, who was later identified as **BUESA** was already

1

outside of the stopped vehicle with LCPD prior to BPA K.O.'s arrival. BPA K.O. observed three additional passengers inside the stopped vehicle. While talking to **BUESA**, BPA K.O. noticed that **BUESA** appeared fidgety and therefore BPA K.O. placed **BUESA** inside of his marked unit while BPA K.O. waited for supervisor approval to conduct the immigration inspection.

5. While waiting, two additional BPA, BPA L.H., Star S-448 (hereafter, "BPA L.H.") and BPA J.L., Star S-466 (hereafter, "BPA J.L.") arrived in the area, both in their marked USBP vehicles and wearing their USBP issued uniforms. LCPD took the remaining three passengers out of the stopped vehicle and had them sit on the ground by a chain-link fence on Montezuma Street. **BUESA** was taken out of BPA K.O.'s vehicle and allowed to join the other passengers, who included **CANTARERO** and **DIAZ**. Supervisory BPA (SBPA) J.D., Star S-39 (hereafter, "SBPA J.D.") arrived and gave approval to conduct an immigration inspection.

6. BPA K.O. began asking **DIAZ** where he was from, where he was born, and if he had legal documentation to be in the United States. At this time, **DIAZ** was compliant but was slow to answer questions and was frequently looking around as if to check his surroundings. **DIAZ** informed BPA K.O. that he was in fact in the United States illegally. As BPA K.O. was speaking with **DIAZ**, BPA J.L. asked **BUESA** to stand up. As BPA J.L. took hold of **BUESA**'s wrist, **BUESA** grabbed BPA J.L.'s arm and forcefully pushed BPA J.L. away and began to flee. **BUESA** was quickly caught by BPA L.H. and BPA J.L and a brief scuffle ensued as **BUESA** was resisting arrest. BPAs were able to gain control of **BUESA** and **BUESA** was placed into handcuffs and escorted to a USBP vehicle.

7. Simultaneously to **BUESA** resisting arrest, **CANTARERO** and **DIAZ** became non-compliant and resistant. **DIAZ** was able to get to his feet. BPA K.O. gave verbal commands to **DIAZ** to get on the ground, however **DIAZ** refused and replied in Spanish, that he had a family

and to let him go. BPA K.O. got **DIAZ** to the ground, however, **DIAZ** continued resisting, pushing off of BPA K.O. to create space to escape from underneath of BPA K.O. through his legs. **DIAZ** had knocked BPA K.O.'s glasses off of his face as they went to the ground. BPA K.O. had a hand on the back of **DIAZ** neck and shoulders to maintain control and apply pressure points to get **DIAZ** to stop resisting, which was ineffective. As BPA K.O. began to feel fatigued, BPA K.O. commanded **DIAZ** to stop resisting or he would strike him. An LCPD Officer began assisting BPA K.O. At this point, **DIAZ** was able to strike BPA K.O. in the ribs and abdomen two to three times inflicting bodily injury. BPA K.O. struck **DIAZ** in the head to obtain compliance and the LCPD Officer was able to free one of **DIAZ**'s arms allowing BPA K.O. to apply handcuffs to that wrist. **DIAZ** other arm was underneath of him and **DIAZ** continued to resist and impede BPA's attempt to placing **DIAZ** under arrest. BPA K.O. continued to give **DIAZ** verbal commands to stop resisting and struck **DIAZ** again in the left leg with his knee in an attempt to get **DIAZ** to stop resisting and give the officers his other arm. Another BPA who was equipped with a less lethal taser applied two dry stuns with the taser to **DIAZ**'s lower part of his body. After the second activation of the taser, **DIAZ** stopped resisting and gave up his arm allowing BPA K.O. to apply the handcuffs. BPA K.O. escorted **DIAZ** to his marked unit. Following the altercation, BPA K.O. felt as though his abdomen was bruised and complained of hip pain and pain in his right hand. BPA K.O. was taken to STAT Specialty Hospital for evaluation.

8. As BPAs were occupied trying to regain control of **DIAZ** and **BUESA**, **CANTARERO**, who had attempted to get up to run at the same time **BUESA** and **DIAZ** were resisting, was taken to the ground by a LCPD Officer and held under his bodyweight until additional officers could help. A brief scuffle ensued, **CANTARERO** managed to get to his feet

and charged at BPA L.H., attempting to tackle BPA L.H. BPA L.H. braced himself and was able to restrain **CANTARERO** once **CANTARERO** made contact with BPA L.H. BPA L.H. and LCPD Officers were able to bring **CANTARERO** back to the ground. **CANTARERO** continued to resist on the ground, however when **CANTARERO** was informed that if he did not stop resisting, he would be tazed, **CANTARERO** became compliant and allowed BPAs to place him in handcuffs.

9. BPA K.O., BPA J.L. and BPA L.H. were all Border Patrol Agents employed with the United States government, namely a person designated in section 1114 of Title 18.